IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BARBARA WEAVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 3:10-cv-00438 |
| ) | |
| THE PRUDENTIAL INSURANCE COMPANY ) | Judge Thomas A. Wiseman, Jr. |
| OF AMERICA, and ) | |
| HENDERSONVILLE HOSPITAL CORP., d/b/a ) | |
| HENDERSONVILLE MEDICAL CENTER, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

Plaintiff Barbara Weaver originally filed this action in the Circuit Court for Sumner County, Tennessee on March 22, 2010, asserting claims under state law for promissory estoppel, negligence, and breach of fiduciary duty, and seeking as damages the value of an insurance policy insuring Plaintiff's ex-husband Johnny Weaver, deceased. Defendants removed the matter to this Court on May 4, 2010, on the grounds that the policy at issue is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"), and that Plaintiff's state-law claims relating to the policy are completely preempted by ERISA.

Now before the Court are three motions: (1) a Motion to Remand filed by Plaintiff (Doc. No. 22); (2) a Motion for Judgment on the Pleadings filed by Defendant Prudential Insurance Company of America ("Prudential") (Doc. No. 32); and (3) a Motion to Dismiss for failure to state a claim filed by Defendant Hendersonville Medical Center (the "Hospital") (Doc. No. 7). The motions have been fully briefed and are ripe for resolution. For the reasons set forth herein, Plaintiff's motion to remand will be denied; Prudential's motion for judgment will be granted, and the Hospital's motion will be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts set forth herein are drawn from the Plaintiff's Complaint and the ERISA plan documents attached to the pleadings.

The Hospital provides group life insurance as a benefit to its employees. Prudential issued the Hospital's group policy to HCA Management Services ("HCA"), the Hospital's parent corporation, which provided life insurance benefits under a welfare benefit plan sponsored by the Hospital, through its parent HCA, and insured by Prudential (the "Group Plan"). The formal name of the Group Plan is the "Life, Accidental Death & Dismemberment Plan." (Doc. 23, App. A at 6, § 2.11.) The Hospital's stated intention in creating and sponsoring the Group Plan was to create an employee welfare benefit plan subject to and within the meaning of ERISA. (*Id.* at 4, § 1.03.) The HCA Plan Administration Committee is the Plan Administrator, a committee appointed and maintained by the Hospital. (Doc. 23, App. C at 1, § 2.12.) The Group Plan provides various types of life insurance benefits to eligible participants and beneficiaries, and such benefits are paid for by the Hospital and provided at no cost to employees. Employees are required to pay for supplemental and dependent coverage. Benefit claims are governed by ERISA's claim regulations. (Doc. 23, App. A at 16, § 8.01.)

The Group Plan states that the "persons for whom you may obtain Dependents insurance [are] [y]our legal spouse, *excluding a legally separate spouse or divorced spouse.*" (Doc. 23-9, at 17 (emphasis added).) Thus, employees have the right to purchase group life insurance coverage on spouses, but spousal coverage ceases if the employee divorces her spouse. In the event of divorce and the subsequent end to spousal coverage, the Group Plan allows the divorcing employee to convert the Group Plan into an Individual Life Insurance Contract. In order to obtain conversion coverage, however, "[t]he individual contract must be applied for." (Doc. 23-9, at 27.) The policy also states: "But in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the one hundred and sixth day after you cease to be insured for all or part of the Dependents Term Life Coverage with respect to the dependent." (Doc.23-9, at 24.) The Summary Plan Description further provides that an employee who seeks to convert a group life insurance policy to an individual insurance policy "must request a Conversion Application from Prudential" and "must apply and pay the policy premium within 45 days of [the employee's] dependent's loss of eligibility to participate in coverage." (Doc. 23-6, at 8.) Individual contracts are issued and administered independently of the Group Plan.

Plaintiff began her employment at the Hospital, located in Sumner County, Tennessee, in October 2000. In 2002, Plaintiff enrolled in the Group Plan, Group Policy No. 44028. As part of her participation in the Group Plan, she enrolled in and elected to purchase $25,000 of dependent term life insurance coverage (the "Group Policy") for her then-husband, Johnny Weaver. The Group Policy provided that, in the event of Mr. Weaver's death, Plaintiff would be the beneficiary of $25,000. As indicated above, however, the Group Plan also expressly provided that ex-spouses are not qualified dependents.

Plaintiff and Mr. Weaver divorced on January 5, 2007. Prior to the divorce, Plaintiff spoke with Craig Arnold, the Hospital's Human Resources Director, and told Mr. Arnold that she was planning to get divorced but wanted to continue to have life insurance coverage on Mr. Weaver after the divorce. Plaintiff alleges that Mr. Arnold told her that she would not need to make any changes to her benefits package to retain life insurance coverage on Mr. Weaver after the divorce. Following the divorce, Plaintiff did not obtain a Conversion Application from Prudential, nor did she submit an Application to convert the Group Policy to an individual contract, and no individual contract was ever issued. Plaintiff nonetheless continued to allow a premium for dependent term life insurance coverage on Mr. Weaver, in the amount of $4.95 per pay period, to be deducted from her paycheck. The Hospital remitted the premiums to Prudential, and Prudential accepted the premiums. Prudential was unaware that Plaintiff was divorced.

Mr. Weaver died on November 28, 2008. On January 30, 2009, Plaintiff filed a claim with Prudential to collect $25,000 in dependent life insurance benefits. Prudential denied the claim because Mr. Weaver, as Plaintiff's former spouse, was not a qualified dependent under the Group Plan. Plaintiff appealed this decision and exhausted her administrative remedies under the Group Plan.

Plaintiff filed suit to recover the benefit in Sumner County Circuit Court stating claims under state law for promissory estoppel against Prudential, and negligence and breach of fiduciary duty against the Hospital. As previously indicated, Defendants removed the matter to this Court on the grounds of ERISA preemption.

## II.     ANALYSIS AND DISCUSSION

### A.     Plaintiffs' Motion to Remand

A state court action may be removed to federal court if the district court would have had "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United

States." 28 U.S.C. § 1441; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Under the "well-pleaded complaint rule," removal is generally proper only if a federal question is presented on the face of the plaintiff's complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9–12 (1983); *Warner v. Ford Motor Co.*, 46 F.3d 531, 533–34 (6th Cir. 1995) (noting that while federal preemption is ordinarily a federal defense to a plaintiff's suit, "as a defense, it does not appear on the face of a well-pleaded complaint, and therefore does not authorize removal to federal court" (internal citations omitted)).

However, the complete-preemption doctrine provides "a narrow exception to the well-pleaded complaint rule." *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004). Complete preemption applies in situations when "a federal statute wholly displaces the state-law cause of action," in which case "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *AmSouth Bank*, 386 F.3d at 776.

ERISA contains an integrated enforcement mechanism in § 502(a), 29 U.S.C. § 1132(a), that is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Accordingly, "[a]ctions that could have been brought under § 1132, 'where there is no other independent legal duty that is implicated by a defendant's actions,' are completely preempted by § 1132." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860 (6th Cir. 2007) (quoting *Davila*, 542 U.S. at 210). To come within the complete preemption exception "a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action 'to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.11 (6th Cir. 2002) (quoting *Warner*, 46 F.3d 531, 533–34 (6th Cir. 1995)).

As a matter of law, ERISA completely preempts state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The term "relate to" is given broad meaning under ERISA. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985); *see also Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) (noting that the Sixth Circuit applies ERISA preemption very broadly). Thus "[a] law

'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 86-87 (1983). "[O]nly those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Id.*; *see also Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir. 2003) ("[A]ny juridical complaint for recovery of any benefits allegedly due to the plaintiff under an employee benefit plan is strictly, and exclusively, governed by ERISA jurisprudence."). State law causes of action, including promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith, "are at the very heart of issues within the scope of ERISA's exclusive regulation and . . . are preempted by ERISA." *Cromwell*, 944 F.2d at 1276 (holding that, even though "appellants filed suit in state court alleging . . . promissory estoppel, negligence, and breach of good faith," ERISA preempts these claims since they are at the "heart of issues within the scope of ERISA's exclusive regulation"); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) (holding that ERISA preempted plaintiff's common-law causes of action including tortious breach of contract, breach of fiduciary duties, and fraud in the inducement that arose from a denial of benefits under the insurance contract).

In the present case, Plaintiff readily concedes that the Group Policy is subject to ERISA and that ERISA preempts claims concerning the right to benefits under an ERISA-covered plan. Plaintiff even concedes that the Sixth Circuit has recognized that "claims arising from the right to convert to an individual policy are preempted by ERISA." (Doc. No. 40, at 4 (citing *Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450 (6th Cir. 1997).) Plaintiff insists, however, that her Group Policy was converted into an individual contract, and that claims relating to that individual contract are not governed or preempted by ERISA. Plaintiff asserts that such conversion occurred when she informed the Hospital that she was planning to get divorced and wanted to continue coverage on her then-husband; the Hospital informed Plaintiff that she would not need to make any changes to her benefit package to obtain life insurance coverage on Mr. Weaver after the divorce; and both Defendants continued to accept payment of a premium deducted from Plaintiff's paycheck up until Mr. Weaver's death. In short, Plaintiff seems to

presume that, because Defendants deny that Plaintiff is entitled to recover any benefit under the Group Plan, her claim for benefits under an individual contract must not be preempted by ERISA.

Defendants, on the other hand, point out (and Plaintiff admits) that there is no written individual insurance policy covering the life of Mr. Weaver. In fact, the only policy actually in existence is the Group Policy, which is indisputably subject to ERISA. Moreover, Plaintiff has, from the beginning, sought to recover benefits under the Group Policy issued at a time when Plaintiff and Mr. Weaver were still married. (*See* Compl. ¶¶ 4, 5, 13, 14, 15, 16.) She never contacted Prudential to request a Conversion Application; she never submitted to Prudential an application to convert the Group Policy to an individual policy; and she never actually procured an individual contract. On this basis, Defendants argue first that the question of whether conversion actually occurred is governed by ERISA and, second, that Plaintiffs' claims, although characterized as state-law causes of action for promissory estoppel, negligence, and breach of fiduciary duty, all seek to recover the proceeds of the ERISA-governed group life-insurance policy and are therefore completely preempted by ERISA.

The Court agrees that Plaintiff's claims are completely preempted and that federal subject-matter jurisdiction exists. The Sixth Circuit has accepted the proposition that "state law claims arising out of a 'conversion' policy are not preempted by ERISA. '[O]nce conversion has occurred and the policy is in force . . . there is no longer any "integral connection" between the individual conversion policy and the ERISA plan that gave rise to the right to convert." *Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) (quoting *Mimbs v. Commercial Life Ins. Co.*, 818 F. Supp. 1556, 1562 (S.D. Ga. 1993)). The question posed here, however, is whether a converted policy exists separate and apart from the Group Plan. *Cf. Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 876 (9th Cir. 2001) (noting that an ERISA policy converts when a "participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan"). The question of whether conversion has actually occurred is governed by ERISA.

Moreover, based on the undisputed facts in the administrative record, the Court finds that no individual contract was ever issued. Plaintiff did not follow the Plan procedures for converting her Group Policy, and she has not alleged or demonstrated the existence of an actual individual life insurance contract. Rather, she insists that the ERISA plan permitted conversion, and that she effected such a

conversion through her conversations with one Hospital employee. As discussed below, however, the Group Plan expressly barred any oral modifications to the Plan. As a result, Plaintiff's efforts to recover the proceeds to which she believes she is entitled, under theories of promissory estoppel, negligence, and breach of fiduciary duty, are in actuality efforts 'to recover benefits due to [her] under the terms of [her] plan [or] to enforce [her] rights under the terms of the plan . . . ' as provided in § 1132(a)(1)(B)." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.11 (6th Cir. 2002) (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531, 533–34 (6th Cir. 1995)).

Because no conversion was effected, Plaintiff's claim is governed by ERISA, jurisdiction lies in this Court, and Plaintiff's motion to remand must be denied.

### B. Defendants' Motions

#### *(1) Standard of Review*

Defendant Prudential has moved to dismiss Plaintiff's promissory estoppel claim against it under Rule 12(c) of the Federal Rules of Civil Procedure, which provides that any party may move for judgment on the pleadings after the pleadings have closed, as long as doing so does not delay trial. The Hospital has filed a separate motion for dismissal of the negligence and fiduciary-duty claims against it pursuant to Rule 12(b)(6). In reviewing either motion, the Court must construe the Complaint in the light most favorable to the plaintiff and accept plaintiff's well-pleaded allegations as true. *Nat'l Surety Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 754 (6th Cir. 2007); *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) (legal standard for adjudicating a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion).

A motion under Rule 12(b)(6) or 12(c) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive such a motion, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007). When reviewing the complaint, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Only well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Id.*

In ruling on a motion to dismiss or for judgment on the pleadings, the Court may not consider "matters outside the pleadings." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) (citation omitted). Notwithstanding, when a defendant relies upon documents that are referenced in but not attached to the complaint, the Court may consider those documents without converting the motion into one for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *see also Savage v. Hatcher*, 109 F. App'x 759, 760 (6th Cir. 2004) (citing *Weiner* in the context of consideration of the consideration of a motion for judgment on the pleadings). In the present case, the Plan documents were actually submitted by Prudential in its response in opposition to Plaintiff's motion to remand, but Prudential also cites and relies upon them in support of its motion for judgment on the pleadings. As in *Weiner,* Plaintiff references the "policy" numerous times in her complaint. And, although she insists that the policy in question is an individual contract and not the Group Policy, it is clear that her claims are based on rights under the Group Policy, which is the only policy in existence. Because Plaintiff's rights are governed and controlled by the plan documents governing the Group Policy, the Court will consider those documents along with the Complaint, because they were incorporated through reference to the plaintiff's rights under the "policy," and they are central to Plaintiff's claims. In addition, Plaintiff does not object to the Court's consideration of the Plan documents.

### *(2) Prudential's Motion for Judgment as a Matter of Law*

In its motion, Prudential raises arguments that are largely redundant of the arguments raised in its opposition to the motion to remand. In essence, it argues that Plaintiff's state-law claim of promissory estoppel asserted against Prudential, as well as the claims of negligence and breach of fiduciary duty asserted against the Hospital, are completely preempted by ERISA and should be construed as a single claim under ERISA to collect benefits under a Group life insurance policy covering the life of Plaintiff's ex-husband. Prudential further argues that Plaintiff's claim was rightfully denied because, under the express terms of the Group Plan, the ex-spouse is not an eligible dependent. On that basis, Prudential contends that it is entitled to dismissal of the claim against it and entry of judgment in its favor. In the alternative, Prudential contends that Plaintiff's claim that she intended to convert the Group Policy into an individual contract is not properly a claim against Prudential, because Plaintiff's contention that an individual policy should have come into existence does not implicate Prudential's responsibilities. As discussed above in

connection with Plaintiff's motion to remand, the Court agrees that Plaintiff's state-law claims are preempted by ERISA, and further finds that the ERISA Plan at issue bars Plaintiff's recovery from Prudential.

          *a.*      *Plaintiff's Claims Are Preempted.*

In the present case, Plaintiff insists that she is seeking to recover benefits under an individual life insurance policy that is not governed by ERISA. The material allegations in the complaint in support of her claim are as follows: (1) In 2000, Plaintiff obtained dependent life insurance coverage on her then-husband through her employer's Group Plan, which is an ERISA plan; (2) in 2007, Plaintiff obtained a divorce from her husband; (3) at some point prior to her divorce, Plaintiff informed the Hospital's Human Resources Director that she was getting a divorce but she wanted to continue to have life insurance coverage on her soon-to-be-ex-husband after the divorce; (4) the Human Resources Director told her no changes needed to be made to her benefits package to maintain such coverage; (5) she continued to pay premiums through payroll deductions; (6) Prudential accepted the premium payments; (7) upon her ex-husband's death in 2008, Plaintiff filed a claim with Prudential as "the beneficiary of the policy" (Compl. ¶¶ 4, 6, 7, 9, 11, 13); and (8) Prudential denied her claim on the basis that her ex-husband was not a covered dependent under the terms of the Group Plan. In her response in opposition to Defendants' motions, Plaintiff insists that she "applied" for conversion coverage when she told the Hospital about her divorce and asked to continue coverage, and secured such coverage by virtue of the fact that the Hospital told her she did not need to do anything else, and she continued to pay life insurance premiums to Prudential through payroll deductions.[1]

Plaintiff's arguments notwithstanding, it is clear that if in fact an individual contract existed, Plaintiff would have filed suit for breach of contract, rather than asserting causes of action for promissory

---

[1] Plaintiff also contends that disputed issues of fact preclude entry of judgment in favor of Prudential. That argument is without merit because, in ruling on the defendant's motion, the Court presumes that the facts alleged in the Complaint are true, and draws all permissible inferences from those facts in the light most favorable to the Plaintiff. The Court does not, however, accept as true Plaintiff's conclusory assertions or legal arguments. The question of whether Plaintiff's conversation with a Hospital employee and continued payment of premiums effected a conversion of her policy from a Group Plan to an individual contract is a question of law, not fact. Thus, Plaintiff's allegation that she purchased an individual contract is not an allegation that the Court must accept as true for purposes of Prudential's motion.

estoppel, negligence, and breach of fiduciary duty. By their very nature, these causes of action implicitly concede that no individual contract was created. Instead, Plaintiff pursues equitable claims against the Defendants to recover benefits under the Group Policy based on the fact that no individual contract was actually created. Her claims unavoidably relate to the Group Policy, since that was the only policy ever issued to Plaintiff. In other words, through her equitable state-law claims, Plaintiff seeks to recover the benefit that *would have been due* under the Group Policy if she had not divorced her husband or if she had actually converted the Group Policy into an individual contract.

As discussed above, however, ERISA completely preempts state law claims that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), and the term "relate to" is given broad meaning under ERISA. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985); *see also Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) (noting that the Sixth Circuit applies ERISA preemption very broadly). The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Id.*; *see also Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir. 2003) ("[A]ny juridical complaint for recovery of any benefits allegedly due to the plaintiff under an employee benefit plan is strictly, and exclusively, governed by ERISA jurisprudence."). State-law claims such as the claims for promissory estoppel, negligence, and breach of fiduciary duty asserted in the case at bar, "are at the very heart of issues within the scope of ERISA's exclusive regulation and . . . are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 41 (1987) (ERISA preempts claims for breach of contract and bad faith resulting from a denial of benefits under the group insurance contract).

In sum, there is no dispute in this case that only one life insurance policy was ever issued: the Group Policy Plaintiff procured when she was still married to her ex-husband and was entitled to obtain a policy insuring the life of a spouse as an eligible dependent under the Group Plan. Her state-law cause of action against Prudential for promissory estoppel amounts to nothing more than an attempt to recover benefits to which she believes she is entitled under that Group Plan. As such, that claim is completely preempted by ERISA, and will instead be "characterized as a superseding ERISA action 'to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)."

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.11 (6th Cir. 2002) (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531, 533–34 (6th Cir. 1995)).

       b.  *Plaintiff's Claim against Prudential for Benefits Is Barred by the Plan Documents.*

As set forth above, employees covered by the Group Plan have the right to purchase group life insurance coverage on spouses, but spousal coverage ceases if the employee divorces her spouse. The Plan states: "You can convert your dependents' coverages to individual policies if your dependent no longer meets the eligibility requirements. . . . You must request a Conversion Application from Prudential to apply for a conversion of your group life insurance policy to an individual insurance policy." (Doc. No. 23-6, at 8; Doc. No. 23-9, at 27 (stating that, in order for an employee to obtain conversion coverage, "[t]he individual contract must be applied for").) The Plan provides the address and telephone number for contacting Prudential to request a Conversion Application. Individual contracts are issued and administered independently of the Group Plan. There is no indication in the record that Plaintiff requested a Conversion Application from Prudential or that she ever notified Prudential that her divorce had become final. Consequently, it is clear that Plaintiff failed to comply with the Plan requirements for converting her policy into an individual policy.

Moreover, Plaintiff's assertion that Prudential should be bound by the oral representations of the Hospital's HR Director as its agent is contrary to established law. First, Supreme Court precedent establishes that state agency laws are preempted by ERISA, and that the policyholder-employer is not the agent of the insurer. *Unum Life Ins. Co. v. Ward*, 526 U.S. 358, 364 (1999); *see id.* at 379 ("[D]eeming the policyholder-employer the agent of the insurer would have a marked effect on plan administration. It would 'forc[e]' the employer, as plan administrator, to assume a role, with attendant legal duties and consequences, that it has not undertaken voluntarily." (quoting the *amicus curiae* brief of the United States)). In addition, the clear terms of a written employee benefit plan may not be modified or superseded by oral undertakings on the part of the employer. *Sprague v. Gen. Motors*; 133 F.3d 388, 402–03 (6th Cir. 1998); *see McKenzie v. Advances Stores Co.*, 488 F. Supp. 2d 658, 671 (S.D. Ohio 2007) (holding that the plaintiff was bound by the clear terms of the Summary Plan Description even though he never received a copy of it, and his employer had made express representations regarding coverage that were contrary to the provisions of the Summary Plan Description). As the Sixth Circuit has

recognized, "Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan." *Musto v. Am. Gen. Corp.*, 861 F. 2d 897, 910 (6th Cir. 1988). "If the terms of these . . . plans could be made to depend upon evidence as to oral statements . . . the degree of certainty that Congress sought to provide for would be utterly impossible to attain." *Id.*

Likewise unavailing is Plaintiff's claim that she "substantially complied" with the Plan's conversion coverage election provisions. First, it is not clear that the Sixth Circuit would apply the "substantial compliance doctrine" in this context. *See Kmatz v. Metro. Life Ins. Co.,* 232 F. App'x 451, 456 (6th Cir. 2007) ("[W]hile other circuits have embraced the substantial-compliance doctrine, [the Sixth Circuit's] take on the doctrine is less clear."). As the Western District of Kentucky noted recently in *Swedish Match North America, Inc. v. Tucker*, Slip Copy, No. 4:09-CV-00068-M, 2010 WL 2721875 (W.D. Ky. July 8, 2010), the confusion apparently stems from the fact that, while the Sixth Circuit has applied the substantial-compliance doctrine in numerous cases, it has in others expressly found the doctrine preempted by ERISA. *Compare, e.g.*, *Kmatz,* 232 F. App'x at 456 (declining to reach a decision as to "whether the doctrine has force in this circuit" because, even if the doctrine applied, the plan participant's actions fell short of substantial compliance with the plan's requirements); *Life Ins. Co. of N. Am. v. Leeson,* 81 F. App'x 521, 523–24 (6th Cir. 2003) (engaging in substantial-compliance discussion but finding no substantial compliance); *Aetna Life Ins. Co. v. Weatherford*, 924 F.2d 1057 (Table), 1991 WL 11611, at *1, *6 (6th Cir. Feb. 5, 1991) (same), *with Unicare Life & Health Ins. Co. v. Craig,* 157 F. App'x 787, 791 (6th Cir. 2005) (explaining that "[t]he magistrate judge followed the majority approach and examined the beneficiary-designation issue under the 'substantial compliance' rule . . . [and] [t]he magistrate judge erred") (citing *Metro. Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir. 1996); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990)).

However, even when the Sixth Circuit has applied the substantial-compliance doctrine, the test is whether the insured did "all that he reasonably could do to meet the conditions of the policy." *Leeson*, 81 F. App'x at 524 (6th Cir. 2003) (citing *Magruder v. Northwestern Mutual Life Ins.,* 512 F.2d 507, 509 (6th Cir. 1975)). Merely taking initial steps to effectuate a change does not mean that the insured did "all that he reasonably could have done." *Id.* (finding no substantial compliance where the decedent filled out a

change-of-beneficiary form but forgot to send it in, holding that the steps the insured took toward changing the beneficiary of his policy did not equate to his doing everything he reasonably could have done because he did not give the form to the insurance company); *see also Weatherford*, 1991 WL 11611, at *5 (6th Cir. 1991) (finding no substantial compliance when the decedent "partially completed" a change-in-beneficiary form by checking a box labeled "Change in Beneficiary Designation," but did not designate a beneficiary, obtain a witness's signature or mail in the form; holding that the plaintiff did not do all that he could do since the policy stated any change had to be requested in writing). Even assuming the doctrine applies in this context, it is abundantly clear that Plaintiff did not do "all she could do" to comply with the Policy's requirements: She never notified Prudential that she was divorced, nor did she request or complete a Conversion Application. Her alleged single conversation with the Hospital's HR Director does not qualify as substantial compliance sufficient to bind Prudential.

In sum, the Group Plan provides explicit procedures for conversion that Plaintiff did not follow. Even accepting as true Plaintiff's allegation that the Hospital's HR Director misinformed her that she did not to do anything following her divorce to convert her group policy to an individual contract, that misinformation was not sufficient either to bind Prudential or to override or modify the clear written terms of the Group Policy. Under that Group Policy, which is the only life insurance policy issued to Plaintiff, Plaintiff's ex-spouse was not an eligible dependent, and Prudential therefore had no obligation to remit payment of benefits to Plaintiff. Prudential is entitled to judgment in its favor and dismissal of the claims against it.

### *(3)  The Hospital's Motion to Dismiss*

In its own Motion, the Hospital contends that (1) the state-law causes of action asserted against it for breach of fiduciary duty and negligence are preempted by ERISA; and (2) even if the state-law breach-of-fiduciary-duty claim is recast as a fiduciary claim under ERISA, Plaintiff cannot recover monetary damages on that claim, citing *Alexander v. Bosch Automotive Systems, Inc.*, 232 F. App'x 491 (6th Cir. 2007), and *Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007). Plaintiff responds that the Hospital's reference to *Alexander* is misplaced because the case is factually inapposite, and that the Sixth Circuit's decision in *Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999), is controlling and requires that the Hospital's motion be denied.

As an initial matter the Court again finds, for the reasons set forth above, that Plaintiff's state-law claims are completely preempted. The negligence claim has no counterpart under ERISA and is subject to dismissal for the same reasons that require dismissal of the claim against Prudential. Rather than dismissing outright the claim for breach of fiduciary duty, however, the Court will construe it and adjudicate it as a claim under ERISA for breach of fiduciary duty. *Cf. Kmatz v. Metro. Life Ins. Co.*, 458 F. Supp. 2d 553 (S.D. Ohio 2005) (finding plaintiff's state-law breach-of-fiduciary-claim to be preempted by ERISA, but holding that it should be adjudicated as an ERISA claim).

The Hospital argues that even if the Plaintiff's claim is construed as one for breach of fiduciary duty under ERISA, the "exclusive remedies" for breach of fiduciary duty under ERISA are enumerated in ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), neither of which subsection permits the recovery of monetary damages of the type Plaintiff seeks here. Plaintiff insists, to the contrary, that her claim is brought under 29 U.S.C. § 1132(a)(1)(B), which permits the recovery of benefits.

The law appears to be on Plaintiff's side in this particular dispute. The referenced provisions state in full as follows:

(a) A civil action [under ERISA] may be brought–

(1) by a participant or beneficiary—

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 [ERISA § 409] of this title [entitled "Liability for Breach of Fiduciary Duty"];[2]

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3).

---

[2] 29 U.S.C. § 1109 provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary. . . ." This provision is obviously inapplicable in the present case.

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court was called upon to consider whether § 1132(a)(3) (ERISA § 503(a)(3)) authorized a lawsuit for individual (equitable) relief. The Court held that it was, and in the context of refuting the petitioner's contention that ERISA's remedies for breach of fiduciary duty were contained exclusively in ERISA § 409, noted that "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, one that is outside the framework of [29 U.S.C. § 1132(a)(2)] and cross-referenced § 409 [29 U.S.C. § 1109], and *one that runs directly to the injured beneficiary.*" *Varity Corp.*, 516 U.S. at 512 (citing 29 U.S.C. § 1132(a)(1)(B); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 108 (1989)).

Moreover, the Sixth Circuit has awarded benefits directly to plan participants as a result of a plan administrator's breach of fiduciary duty. *Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999), involved a permanently disabled plaintiff who claimed she lost the opportunity to secure long-term disability benefits because the defendant, her prior employer, breached its fiduciary duty under ERISA by failing to notify her about available long-term disability benefits, despite her husband's general requests for information about the availability of disability benefits for his wife. *Id.* at 548. The Sixth Circuit held that "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *Id.* at 547; *see also Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 847 (6th Cir. 2003) (noting the Sixth Circuit has repeatedly held that "[a] fiduciary must give complete and accurate information in response to participants' questions" (citations omitted)); *James v. Pirelli Armstrong Tire Co.*, 305 F.3d 439, 455 (6th Cir. 2002) (holding a breach of fiduciary duty under ERISA "occurs when the employer or plan administrator on its own initiative provides misleading information about the future benefits of a plan").

In addition to holding that the employer as plan administrator had breached its duty to the plaintiff by failing to provide accurate and complete information regarding her benefits upon inquiry, the Court remanded the case to the district court for a determination of the extent of the plaintiff's damages and instructions that it enter judgment on behalf of the plaintiff in that amount. Although the Court did not

state the ERISA provision under which it awarded damages for breach of fiduciary duty, it clearly did so under the umbrella of § 1132(a)(1) rather than (a)(2) or (a)(3), which do not authorize damages awards. Other Sixth Circuit opinions have also awarded damages to plan beneficiaries resulting from breach of fiduciary duties. *See, e.g.*, *Drennan v. Gen. Motors Corp.*, 977 F.2d 246 (6th Cir. 1992) (affirming district court's finding of liability on the part of GM for breach of fiduciary duty, but remanding for clarification and recalculation of the damages award).

In *James v. Pirelli Armstrong Tire Corp.*, the district court had entered judgment in favor of two plaintiffs, finding the employer had breached its fiduciary duty to them by providing inaccurate and misleading responses to direct questions regarding ERISA plan benefits as part of early retirement incentive programs, and awarded damages. Those plaintiffs did not appeal. The district court found the other plaintiffs were not entitled to damages because the employer did not "deliberately or negligently misl[ea]d them in answering their direct questions." 305 F.3d at 448. Those plaintiffs appealed, seeking to have the ruling that applied to the two prevailing plaintiffs extended to their situations.

On review, the Sixth Circuit clarified that a plaintiff seeking to establish a claim for breach of fiduciary duty under ERISA based on "alleged misrepresentations concerning coverage under an employee benefit plan" must establish "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to [her] detriment." *Id.* (citations omitted). In light of that standard, the Court held that the district court had erred in finding that Pirelli did not breach its fiduciary duty to the other plaintiffs when it "provided, on its own initiative, materially misleading and inaccurate information about the plan benefits to Plaintiffs in group meetings and exit interviews . . . even though not all Plaintiffs asked specific questions about the future benefits of the plan." *Id.* at 455. The court therefore reversed and remanded for further proceedings.

Based on *James*, the Court finds that Plaintiff here has stated a claim for breach of fiduciary duty under ERISA: (1) It may reasonably be inferred from the allegations in the complaint that the Hospital's Human Resources Director was acting in a fiduciary capacity when he allegedly informed Plaintiff, in response to her questions, that she would not need to do anything to maintain life insurance coverage on her husband after their pending divorce; (2) the representation that she would not need to do anything

was arguably a material misrepresentation; and (3) the Plaintiff, according to her own allegations, relied on that misrepresentation to her detriment. Moreover, under *Drennan, Krohn*, and *James*, it appears that Plaintiff may be entitled under 29 U.S.C. § 1132(a)(1)(B) to recover monetary damages ("benefits due to [her] under the terms of [her] plan") resulting from the alleged misrepresentations.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff's motion to remand will be denied and Prudential's motion for judgment on the pleadings will be granted. The Hospital's motion to dismiss will be granted in part and denied in part. Specifically, Plaintiff's state-law claim for negligence is completely preempted and subject to dismissal. She will, however, be permitted to proceed on her claim against the Hospital for breach of fiduciary duty.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge