IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BARBARA WEAVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:10-cv-438 |
| | ) | |
| THE PRUDENTIAL INSURANCE COMPANY | ) | Judge Thomas A. Wiseman, Jr. |
| OF AMERICA, and | ) | |
| HENDERSONVILLE HOSPITAL CORP., d/b/a | ) | |
| HENDERSONVILLE MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is defendant Henderson Hospital Corp.'s Motion for Judgment as a Matter of Law (ECF No. 59). For the reasons set forth herein, the motion will be denied.

I.      FACTUAL AND PROCEDURAL BACKGROUND

A.  Procedural Background

Plaintiff Barbara Weaver originally filed this action in the Circuit Court for Sumner County, Tennessee on March 22, 2010, asserting claims under state law against defendant The Prudential Insurance Company of America ("Prudential") for promissory estoppel, and against defendant Hendersonville Hospital Corp. ("Hendersonville Hospital" or "the Hospital") for negligence and breach of fiduciary duty, and seeking as damages the value of an insurance policy insuring the life of Plaintiff's ex-husband Johnny Weaver, now deceased. The defendants removed the matter to this Court on May 4, 2010 on the grounds that the policy at issue is

governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), and that the plaintiff's state-law claims relating to the policy are completely preempted by ERISA. The Court subsequently denied the plaintiff's motion to remand, finding that her claims related to an employee benefit plan and were therefore completely preempted by ERISA. The Court granted Prudential's motion for judgment on the pleadings, finding that the allegations in the complaint, construed as true, failed to establish that Prudential had an obligation under 29 U.S.C. § 1132(a)(1)(B) to remit payment of benefits to the plaintiff under the terms of the group Plan. The claims against Prudential were dismissed in their entirety.

The Court then granted in part and denied in part Hendersonville Hospital's motion to dismiss for failure to state a claim. Specifically, the Hospital argued that (1) the state-law causes of action against it for breach of fiduciary duty and negligence were preempted by ERISA; (2) even if the state-law breach-of-fiduciary duty claim were recast as a fiduciary-duty claim under ERISA, the plaintiff could not recover monetary damages (i.e., the life insurance benefits) on that claim. (*See* ECF No. 7, at 1.) The Court agreed that the state-law claims were preempted by ERISA and dismissed the negligence claim on the basis that it had no counterpart under ERISA. The Court construed the common-law fiduciary-duty claim as a claim under ERISA for breach of fiduciary duty. And the Court further concluded, for purposes of the motion to dismiss, that the plaintiff might have the ability to recover monetary damages for breach of fiduciary duty.

The Hospital did not address the question of whether it was a "fiduciary" under the terms of the Plan in its motion to dismiss, so the Court did not consider that issue. Now, the

Hospital has filed its motion for judgment as a matter of law (ECF No. 59), in which it contends that the Hospital cannot be liable under ERISA for breach of fiduciary duty because it is not a named fiduciary under the Plan. The Hospital also reprises its argument that, even if the Hospital could be found liable for breach of fiduciary duty, ERISA does not allow a plaintiff to recover money damages – i.e., life insurance benefits – as a remedy for an alleged fiduciary violation. The plaintiff has filed her response in opposition to the motion.

### B. Relevant Facts

At all times relevant to this suit, defendant Henderson Hospital provided its employees with group life insurance benefits through the Life, Accidental Death & Dismemberment Plan (the "Plan"). The Plan is sponsored by HCA Management Services ("HCA"), Hendersonville Hospital's parent corporation, and insured by Prudential. The Hospital's stated intention in creating and sponsoring the Plan was to create an employee welfare benefit plan subject to and within the meaning of ERISA. (Doc. 23-1 at 4, ¶ 1.03.) According to the terms of the Plan as originally stated, the term "Plan Administrator" meant "the Company or its designee(s)." (*Id.* ¶ 2.12.) The "Company" is defined to mean HCA and any of its successors. (*Id.* ¶ 2.04.)) The Plan was later amended to name the HCA Plan Administration Committee as the Plan Administrator. (ECF No. 23-4, at ¶ 3.) (Doc. 23, App. C at 1, § 2.21.) The Plan provides that the "Plan Administrator" is the "named fiduciary" and as such is "responsible for controlling and managing the operation and administration of the Plan." (*Id.* ¶ 4.01.) The Plan Administrator is granted "the complete discretionary authority to control the operation and administration of [the] Plan, with all the powers necessary to enable it to properly carry out such responsibilities, including, but not limited to, the power to construe the terms of this Plan, to determine status,

coverage and eligibility for benefits and to resolve all interpretive, equitable and other questions that shall arise in the operation and administration of the Plan." (*Id.*) The Plan Administrator also has the authority "to engage such agents, legal counsel, actuaries, accountants, consultants, experts, specialists, advisers, and other persons as may be required to assist in administering the plan." (*Id.* ¶ 4.01(e).) The Plan also states that the any "allocation, delegation or designation" of the Plan Administrator's responsibilities under the plan to other persons must be in writing. (*Id.* ¶ 4.01(f).) The Plan Administrator is responsible for "supplying all information . . . to . . . Employees, eligible dependents, beneficiaries, and others as required by law." (*Id.* ¶ 4.02.)

Of particular relevance to the case at bar, the Plan provides basic life insurance benefits to participants at no cost and also allows participants the option of purchasing supplemental dependent life insurance, but only for eligible dependents. The Plan defines eligible dependents to include only a participant's "legal spouse, excluding a legally separated spouse or divorced spouse." (ECF No. 23-9, at 17 (App. F at 14).) The Plan's Summary Plan Description ("SPD") reiterates that only a "lawful spouse" qualifies as an eligible dependent. (ECF No. 23-5, at 12.)[1] In the event of divorce and the resulting end to spousal coverage, the Plan allows the divorcing employee to convert the Plan life insurance policy into an individual life insurance contract. In order to obtain individual coverage, however, "[t]he individual contract must be applied for." (Doc. 23-9, at 27.) The Plan policy also states: "But in no event may you convert

---

[1] The SPD is inconsistent with the Plan insofar as the latter expressly excludes a legally separated spouse from the definition of "legal spouse," while the SPD expressly includes "a legally separated spouse" within the definition. This discrepancy is not material here because, among other reasons, the plaintiff does not claim to have relied on the SPD.

the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the one hundred and sixth day after you cease to be insured for all or part of the Dependents Term Life Coverage with respect to the dependent."  (ECF 23-9, at 24.)  The Summary Plan Description ("SPD") similarly provides that an employee who seeks to convert a group life insurance policy to an individual insurance policy "must request a Conversion Application from Prudential" and "must apply and pay the policy premium within 45 days of [the employee's] dependent's loss of eligibility to participate in coverage."  (ECF 23-6, at 8.) Individual contracts are issued and administered independently of the group Plan.

As set forth in the complaint, plaintiff Barbara Weaver began her employment at the Hospital in October 2000.  In 2002, Ms. Weaver became a participant in the Plan and elected to purchase dependent life insurance in the amount of $25,000 for her then-husband, Johnny Weaver.  Barbara and Johnny Weaver divorced effective January 5, 2007.  It is undisputed that Ms. Weaver never requested an application for conversion coverage and that an individual life insurance policy was never issued to Ms. Weaver for the life of Mr. Weaver.

Nonetheless, according to Ms. Weaver, she approached Kreg Arnold, Director of Human Resources for Hendersonville Hospital, in January 2007 to discuss the impact her divorce might have on her benefits.  She was specifically concerned about the life insurance that she had purchased through the Plan covering Johnny Weaver's life, because Mr. Weaver was then 65 years old, and Barbara Weaver was partially dependent on him for financial support.  According to Ms. Weaver, Arnold told her she did not need to do anything to maintain that insurance coverage.  Shortly after the divorce became final, Ms. Weaver again spoke with Arnold to inform him her divorce had gone through, and she asked him if her insurance was still good.  He

responded, "sure, it's fine," or words to that effect. (Weaver Aff., ECF No. 64-3, at 1–2.)[2] Hendersonville Hospital continued to deduct $4.95 from Weaver's salary each pay period to cover the monthly premium on the life insurance on Mr. Weaver until shortly after Mr. Weaver's death on November 28, 2008, nearly two years after his divorce from Barbara Weaver.

On January 30, 2009, Ms. Weaver filed a claim with Prudential for $25,000 in dependent life insurance. Prudential denied the claim on the basis that the plaintiff had obtained a divorce from Johnny Weaver, as a result of which Mr. Weaver was no longer an "eligible dependent" under the terms of the Plan. The plaintiff filed an appeal of the claim with Prudential, which was likewise denied.

Hendersonville Hospital and Arnold, as its agent, both fall within the definition of "employer" set forth in 29 U.S.C. § 1002(5). However, as set forth above, neither the Hospital nor Arnold was ever designated as the Plan Administrator. Regarding his responsibilities under the Plan, Arnold attests in an affidavit as follows:

> 3. As part of my responsibilities as [HR Director for Hendersonville Hospital], I was familiar with the different types of employee benefits provided to employees of [the Hospital], including group life insurance benefits provided through the Life, Accidental Death and Dismemberment Plan (the "Plan").
>
> . . . .
>
> 6. Neither [the Hospital] nor I ever had any discretionary authority or discretionary responsibility in the administration of the Plan.
>
> 7. Neither [the Hospital] nor I performed anything other than purely administrative functions with respect to the Plan (such as distributing, collecting and transmitting open enrollment forms and other plan forms).

---

[2] Arnold denies that these conversations occurred. The Court, of course, accepts Weaver's version of events as true for purposes of the defendant's motion for summary judgment.

(ECF No. 62, at ¶¶ 3–7.)

Weaver's testimony, of course, calls Arnold's assertions into question, as she maintains that he advised her regarding her coverage under the plan. Weaver also offers the testimony of another Hospital employee, Jason Phillips, who likewise had life-insurance coverage on his spouse and, when he told Arnold that he was getting divorced but wished to maintain the coverage, was similarly told that he could continue the coverage without taking any further steps. According to Phillips, based on that advice, he did nothing, but Hendersonville Hospital, despite knowledge that Phillips divorced in 2007, has since then continued to deduct life insurance premiums from his salary to pay for life insurance for his ex-wife. (ECF No. 64-4.)

The Hospital also asserts that under the terms of the Plan, the HCA Plan Administrative Committee delegated all fiduciary responsibilities with respect to life insurance benefit claim determinations, including interpretive and factual determinations, to Prudential. (ECF No. 23-9, at 54–56.) In fact, the ERISA Statement to which the defendant refers simply states that Prudential is designated as the "Claims Administrator" with the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (*Id.* at 54.)[3]

---

[3] The Court is aware that the plaintiff filed with her response in opposition to the defendant's motion for summary judgment, a document titled "Plaintiff's Statement of Facts to Be Proved at Trial." (ECF No. 64-2.) This document is not in compliance with Local Rule 56.01, which provides that a non-movant's response to a movant's statement of undisputed material facts "may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried." L.R. 56.01(c). This statement of additional facts, however, must "be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." *Id.* The plaintiff's document does not contain any citations to the record. Accordingly, the Court declines to consider this document for any purpose. The Court will nonetheless consider and take into account the affidavits submitted by the plaintiff in support of her claims.

## II.     STANDARD OF REVIEW

The Hospital maintains that, because this is an ERISA case concerning a benefits plan that accords the Plan Administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the Court is to review the administrative record under the "arbitrary and capricious" standard of review, and to affirm the underlying benefits decision if the decision was "rational in light of the plan's provisions."  *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).

The plaintiff argues, conversely, that such a deferential standard of review is not warranted when the claim is one for breach of fiduciary duty involving material issues of disputed fact.  Weaver insists that a bench trial is required to resolve the disputed issues of fact, and that the standard of review is *de novo*.

The Court finds that, because the question is not whether benefits were wrongfully denied under the terms of the Plan documents, but whether the Hospital breached its fiduciary duty, a question that was never considered in the course of determining the plaintiff's eligibility for benefits, the *de novo* standard of review is appropriate.  Moreover, although the motion is styled as a motion for judgment as a matter of law, the Court finds that the standard for motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is applicable.  Accordingly, the Court will construe the facts and draw all reasonable inferences in favor of the plaintiff as the non-movant, and will consider whether, under those facts, the defendant is nonetheless entitled to judgment as a matter of law.

**III.    ANALYSIS AND DISCUSSION**

The only claim remaining in this case is one for breach of fiduciary duty against Hendersonville Hospital.  Hendersonville Hospital makes the following arguments in support of its motion for judgment:

(1) That a claim for breach of fiduciary duty can only be brought under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)), and such a claim is only allowed if a claim for benefits under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) does not provide an adequate remedy.  The Hospital asserts that Weaver has an adequate remedy under § 1132(a)(1)(B), "namely, the right to bring a lawsuit to challenge the denial of benefits (which she did)" (ECF No. 60, at 6), and therefore that she cannot bring suit under § 1132(a)(3).

(2)  That claims for recovery of benefits under § 1132(a)(1)(B) that are based on representations that are inconsistent with the terms of an unambiguous plan provision must be dismissed.

(3)  Even if the Court characterizes the claim as one for breach of fiduciary duty under § 1132(a)(3), that the claim must be dismissed because neither the Hospital nor Kreg Arnold is a "fiduciary" with respect to the Plan.

(4)  And finally, that the plaintiff's claim for breach of fiduciary duty must fail in any event because the plaintiff can recover only equitable remedies under § 1132(a)(3), not money damages, but she only seeks money damages in this case.

(ECF 60, at 6.)

**A.    The Plaintiff Does Not Have an "Adequate Remedy" under § 1132(a)(1)(B) against the Hospital.**

Section § 502(a) of ERISA, 29 U.S.C. § 1132(a), provides that:

A civil action may be brought-
>    (1) by a participant or beneficiary
>    >    (A) for the relief provided in subsection (c) of this section [providing for liquidated damages for failure to provide certain information on request], or
>    >    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>    (3) by a participant, beneficiary, or fiduciary
>    >    (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>    >    (B) to obtain other appropriate equitable relief
>    >    >    (i) to address such violations or
>    >    >    (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

The defendant here asserts that the plaintiff has an "adequate remedy" under § 1132(a)(1)(B) and that she therefore cannot bring suit for breach of fiduciary duty under § 1132(a)(3). That position, however, has been expressly considered and rejected by the Sixth Circuit in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007), under factually analogous circumstances.

In *El Paso*, the plaintiff alleged that his employer breached its fiduciary duty under ERISA by "misrepresenting the duration of his 'own occupation' long term disability benefits," *id.* at 838, citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996), for support. As a result of this alleged breach, the plaintiff argued that he should be awarded compensatory damages in the form of one year's worth of compensation, *i.e.*, the difference between the long-term disability benefits as they had been represented to him (two years) and the actual long term disability benefits under the employer's current plan (one year). The district court had determined that the employer, El Paso, was the plan administrator (and therefore a fiduciary) but had dismissed the

fiduciary-duty claim, characterizing it as "nothing more than a repackaged denial of benefits claim, precisely the type of claim expressly rejected by the Supreme Court in *Varity* . . . . Equitable relief under § 1132(a)(3) is, therefore, not 'appropriate' . . . ."   *Id.* at 837.

The Sixth Circuit disagreed, noting that third-party insurance company, Liberty, was the fiduciary who controlled the claims, and that Liberty was clearly the proper party defendant in an action under § 1132(a)(1)(B) concerning the denial of benefits.  The claim against Liberty had been properly dismissed, because there was no dispute that the benefits sought by the plaintiff were not available under the terms of the plan.  However, the § 1132(a)(3) claim was based on misrepresentation by the employer and plan administrator, who did not control the claims (but who had allegedly misrepresented the terms of the plan).  Thus, the court concluded, the claim under § 1132(a)(3) was properly brought against the employer, and was in fact the only type of claim that could have been brought against the employer, since the employer did not control the actual claims.  The court acknowledged that if the claim for benefits under § 1132(a)(1) against Liberty had been successful, the § 1132(a)(3) claim for breach of fiduciary duty against the employer would have been rendered moot.  The opposite was not true, however, as the claim for breach of fiduciary duty, based upon a misrepresentation by an agent of the employer, was conceptually, factually and legally distinct from the claim for benefits against the insurance company itself.  The court therefore reversed judgment for the employer and remanded with instructions that the § 1132(a)(3) claim against it be reinstated.

In the case at bar, Weaver has never stated a claim under § 1132(a)(1)(B) for recovery of benefits under the plan policy, and she implicitly acknowledges that the plan terms unambiguously bar her claim.  Rather, her original claim against Prudential was based upon a

promissory estoppel theory, based on the fact that Prudential had continued to collect life insurance premiums for the two years after she divorced her husband. Her claim against the Hospital is based entirely upon Kreg Arnold's alleged misrepresentations to her regarding her rights under the plan. In other words, she "is not seeking to recover benefits due under the terms of the plan" from the Hospital. *Id.* at 842 (citation omitted). She could not do so, in any event, because Prudential controls the claim in this case. The injury alleged here is "separate and distinct" from a claim that she is entitled to benefits under the Plan. *El Paso*, 477 F.3d at 840. Section 1132(a)(1)(B) does not provide a remedy for the Hospital's alleged misrepresentation.

The defendant's claim that it is entitled to judgment in its favor on the basis that the fiduciary-duty claim is simply a "repackaged" claim for benefits under § 1132(a)(1)(B) is therefore without merit.

**B.     The Plaintiff Does Not Assert a Claim under § 1132(a)(1)(B) against the Hospital.**

The defendant's second argument is likewise without merit, for similar reasons. The defendant asserts that the plaintiff's claim under § 1132(a)(1)(B) for denial of benefits is subject to dismissal because it is based upon alleged representations that are inconsistent with the terms of an unambiguous plan provision. This claim fails simply because, as set forth above, the plaintiff is not asserting claims under § 1132(a)(1)(B). Her claim is, and can only be, brought under § 1132(a)(3) for breach of fiduciary duty because (1) the Hospital admittedly does not control the disposition of claims; and (2) the Hospital is alleged to have made material misrepresentations that are actionable under that provision.

### C.    The Hospital Acted as an ERISA Fiduciary.

Next, Hendersonville Hospital argues that it is not a proper defendant in this action because it is not a named fiduciary under the Plan and, because it has no fiduciary obligations, it cannot be liable for breach of fiduciary duties.  The issue presented, then, is whether the Hospital may be liable for breach of fiduciary duty.

A person is a "fiduciary" under ERISA

with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002(21)(A), *quoted in James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448 (6th Cir. 2002), *cert denied*, 538 U.S. 1033 (2003).  In addition, according to Department of Labor guidelines that elaborate on the definition of a fiduciary under ERISA, "[a] person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary."  29 C.F.R. § 2509.75-8 D-2 (1991).  This is so because the person performing purely ministerial functions "does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so."  *Id.*

Beyond these guidelines, very few courts have directly addressed the question of who qualifies as a fiduciary under ERISA.  In *Howe v. Varity Corp.*, CIV. No. 88–1598–E, 1989 WL 95595 (S.D. Iowa July 14, 1989), the district court found that the employer and owner had acted

as ERISA fiduciaries, and breached their fiduciary duties as such when they harmed plan beneficiaries through deliberate deception. Specifically, the district court noted:

> To the extent that a corporation exercises any discretionary authority or control with regard to an employee benefits plan or the management or disposition of the plan assets, that corporation is a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A). The term "fiduciary" is to be "broadly construed" by the courts. *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984). It "includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title." House Conf. Rep. No. 93–1280, 93rd Congress, 1974, U.S. Code Cong. and Ad. News 4639, 5038, 5103.
>
> In accordance with the statutory definition of a fiduciary, directors of a corporation are fiduciaries to the extent that they exercise any discretionary management or control over aspects of an employee benefits plan.

*Id.* at *6 (some internal citations omitted). The Supreme Court affirmed that district court's finding that Varity had functioned both as the plaintiffs' employer and as a fiduciary based on the facts in the district court's record. Specifically, the facts showed that the defendant, Varity, was "both an employer and the benefit's plan administrator, as ERISA permits," and was acting in its capacity as plan administrator, and not merely in its capacity as employer, when it made misrepresentations giving rise to the plaintiffs' claims. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (citations omitted).

Likewise, the First Circuit has held that "a fiduciary is defined functionally" under ERISA. *Livick v. The Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008). Thus,

> a party is a fiduciary "to the extent" that he or she exercises discretion over the management of the plan or its funds or over its administration. 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *Varity*, 516 U.S. at 498. A fiduciary named in an ERISA plan can undertake non-fiduciary duties, and *a party not identified as a plan fiduciary can become one if, but only to the extent that, he or she undertakes discretionary tasks related to the plan's management or administration*. *See Pegram*, 530 U.S. at 225–26 (employer can switch between wearing its "fiduciary" and "employer" hats); *Varity*, 516 U.S. at 498 (same); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998)

(person can become fiduciary to extent she undertakes fiduciary duties). Thus in cases alleging breach of ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest," . . . "but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

*Id.* (emphasis added). In *Livick*, the court went on to conclude that the human resources representative in that case was neither a named fiduciary under the plan at issue in that case, nor a "functional fiduciary" under the facts presented there, because "providing [plaintiff] with an estimate of his future pension benefits was not a fiduciary task." *Id.* at 29 (citing 29 C.F.R. § 2509.75-8(D-2); *see also, e.g.*, *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 544 n.1, 547 (7th Cir. 1997) (listing tasks—including "determining benefit amounts due under the plan, and responding to participants' inquiries about pension benefits"—assigned to a benefit analyst who was found to be a non-fiduciary). More specifically, the *Livick* court noted that "all [the plaintiff] sought and received from [the human resources representative] was an estimate: his benefits had already accrued, he was not choosing among different options, and there was no discussion of the plan itself. This was purely a ministerial request." *Id.* (some internal citations omitted).

*Beddall*, another First Circuit case relied upon by the *Livick* court, similarly focused on ERISA's extension of the definition of a fiduciary to cover those who act as fiduciaries regardless of whether they are named as fiduciaries:

ERISA's fiduciary duty provisions not only describe who is a "fiduciary" or "co-fiduciary," but also what activities constitute a breach of fiduciary duty. In the first instance, the statute reserves fiduciary liability for "named fiduciaries," defined either as those individuals listed as fiduciaries in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure. 29 U.S.C. § 1102(a)(2). *But the statute also extends fiduciary liability to functional fiduciaries—persons who act as fiduciaries (though not explicitly*

> denominated as such) by performing at least one of several enumerated functions with respect to a plan.

*Beddall v. State Street Bank & Trust*, 137 F.3d 12, 18 (1st Cir. 1998) (emphasis added). Under this scheme, "[t]he key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)." *Id.*

In the present case, Hendersonville Hospital argues that it is neither a named fiduciary nor a functional fiduciary. Specifically, the Hospital asserts that "at most" the Hospital and Kreg Arnold "performed purely ministerial functions with respect to the Plan, such as distributing, collecting and transmitting open enrollment forms and other Plan forms." (ECF No. 60, at 10.)

For purposes of the defendant's motion, however, the Court must accept as true the plaintiff's allegations that she asked Kreg Arnold, the Hospital's Human Resources Director, a direct question regarding the continuation of the group insurance policy covering the life of her husband, that is, whether the coverage would continue after she divorced her husband. Weaver alleges that Arnold told her more than once that she did not need to do anything to maintain the policy in effect despite the divorce. She also has presented evidence that Arnold has relayed the same information to at least one other employee in the same situation. This information was incorrect, because the policy by its terms did not cover former spouses, but the plaintiff would have had the ability to convert the group policy into an individual life insurance policy if she had given notice of the divorce and requested a form for converting the policy within the timeframe specified in the policy. In other words, Weaver went to Arnold for advice regarding the impact of a life-changing event on her eligibility for continued coverage

under the Plan, and Arnold, according to Weaver, provided her with information that was incorrect but upon which she reasonably relied.

Arnold, that is, engaged in *precisely* the same type of behavior that the Sixth Circuit has found in other situations. Most notably, in *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, (6th Cir. 1999), the Sixth Circuit held that misinformation supplied by a hospital's human resources employee, in response to a direct inquiry from a plan participant's husband regarding the participant's eligibility for long-term disability benefits, supported a claim under ERISA for breach of fiduciary duty against the hospital. In *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc), the Sixth Circuit noted that employers do not act in a fiduciary capacity by amending or terminating a benefit plan, but that "'conveying information about the likely future of plan benefits' [is] a discretionary act of plan administration" giving rise to a fiduciary duty. *Id.* at 404–05 (quoting *Varity*, 516 U.S. at 504). Assuming the plaintiff's allegations to be true, the Court finds that Kreg Arnold did not act in a purely ministerial role in counseling Weaver regarding the impact of her divorce on her eligibility for benefits under the plan. He clearly under took a discretionary task—interpretation of the plan's terms—related to the plan's management or administration. *See* 29 U.S.C. § 1002(21)(A).

The inescapable truth is that an ordinary employee is justified in going to her employer's director of human resources to request information regarding her coverage under a group policy sponsored by the employer, even if, as in this case, the actual sponsor is the employer's parent corporation. Moreover, employees regularly, foreseeably, and reasonably rely on information provided by human resources managers regarding their benefits under employer-sponsored ERISA plans. Under the circumstances presented here, and based upon Sixth Circuit

and Supreme Court precedent applied to the facts as alleged by the plaintiff, the Court finds that the Hospital, through Kreg Arnold, acted in a fiduciary capacity, and thus as a functional fiduciary, when Arnold, as part of his job responsibilities as a human resources manager for the Hospital, provided misinformation to Weaver, in response to a direct question, regarding the terms of her benefit plan and the effect of a major life event—divorce—on her coverage under that plan. It is immaterial that neither the Hospital nor Arnold individually is a "named" fiduciary under the plan, and that there is no evidence of an express written delegation of duties to the Hospital or Arnold by the HCA Plan Administration Committee. *Cf. Pegram v. Herdrich*, 530 U.S. 21, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Sprague*, 133 F.3d at 404–04 ("'[C]onveying information about the likely future of plan benefits' [is] a discretionary act of plan administration" giving rise to a fiduciary duty (quoting *Varity*, 516 U.S. at 504)).

### D. The Plaintiff May Recover under § 1132(a)(3).

The defendant argues that "money damages – such as the life insurance benefits sought by plaintiff – 'are, or course, the classic form of legal relief,' not equitable relief, and are therefore not recoverable pursuant to [§ 1132(a)(3)]." (ECF No. 60, at 11 (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255 (1993); *Alexander v. Bosch Automotive Sys., Inc.*, 232 F. App'x 491, 501–02 (6th Cir. 2007); *Amschwand v. Spherion Corp.*, 505 F.3d 342, 345–48 (5th Cir. 2007)).) Thus, the defendant argues, "even if plaintiff could establish a claim for breach of

fiduciary duty, and even if she sues a fiduciary, she could not recover the personal money damages she seeks in the lawsuit." (*Id.*)

In *Mertens v. Hewitt Associates*, the Supreme Court considered only the question of whether ERISA authorized suits for money damages against non-fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. 508 U.S. at 251. It answered that narrow question in the negative. *Id.* at 263. The Court, in reaching that conclusion, also distinguished between the terms "equitable relief" as used in § 1132(a)(3) and "legal relief," and noted that monetary damages "are, of course, the classic form of *legal* relief." *Id.* at 255.

In *Alexander*, the defendant conceded liability to the plaintiffs under § 1132(a)(3) for having purposefully timed the plaintiffs' layoffs and defendant's plant's closure to avoid paying plant-closure benefits to the plaintiffs, but argued that the relief ordered by the district court did not constitute "appropriate equitable relief" under the statute, and that the plaintiffs were not entitled to recover damages arising from the breach of fiduciary duty. The Sixth Circuit agreed, relying on *Mertens*, first finding that the equitable remedy of reinstatement was not possible, principally because the plant was closed so there were no jobs available to which the plaintiffs could have been reinstated. The Sixth Circuit also found that remedy of contract reformation was not appropriate either, because contract reformation, while a traditional equitable remedy, it is typically sought by a *party* to a contract, not a third party. Plaintiffs in this case were a third party to a contract between the defendant and a union regarding post-closure benefits for employees who were actually still employed at the time the defendant's plant closed, and reforming that contract to include the plaintiffs on the list of employees entitled to post-closure benefits affected the rights of others who were not party to the

defendant's breach of its obligations to the plaintiffs. The Sixth Circuit also considered and rejected restitution as a potential equitable remedy, and finally concluded that it could not fashion any other appropriate equitable remedy for the plaintiffs: "In sum, Plaintiffs are left without a remedy that falls under the rubric of 'appropriate equitable relief' as permitted under ERISA § 502(a)(3). Such an unsettling phenomenon is not unheard of in ERISA cases." *Id.* at 501 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 222 (2004) (Ginsburg, concurring) (noting "a host of situations in which persons adversely affected by ERISA-proscribed wrongdoing cannot gain make-whole relief")).

This Court notes, however, that *Alexander* is an unreported case, and the result there appears to be completely at odds with that in *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, (6th Cir. 1999), a case factually much more similar to the one at bar. There, the court's discussion of remedies was much less thorough than that in *Alexander*, but the holding appears to authorize the relief sought here. In *Krohn*, the plaintiff, a nurse formerly employed by the defendant hospital, was permanently disabled in an automobile accident. She sued the hospital for breach of fiduciary duty under ERISA based on her allegations that she lost the opportunity to secure long-term disability insurance benefits as a result of misinformation received from the hospital's human resources representative regarding her rights under the group plan. The district court entered summary judgment for the defendant, but the Sixth Circuit reversed, finding that the district court had construed the hospital's fiduciary duty too narrowly, and specifically held that the hospital was liable for failing "to respond adequately to a request by the plaintiff's husband for information about plan benefits." *Id.* at 545.

The facts showed that the plaintiff was employed by the hospital at the time she was in an automobile accident that caused a closed-head injury and resulted in her permanent disability. At the time of the accident, she was eligible for both short- and long-term disability benefits through the hospital's disability policies. Within two weeks after the accident, the plaintiff's husband spoke with a personnel assistant at the hospital to inquire about the benefits to which his wife was entitled. The assistant told him the plaintiff would be entitled to short-term benefits if she would be out of work more than fourteen days, but that her coverage through her car insurance would probably be better. The assistant did not mention long-term disability coverage. The husband nonetheless completed and returned an Initial Application for Disability Benefits, but the human resources assistant placed the application in the plaintiff's employee file and did not submit it to the long-term disability insurance provider as a claim for benefits. The plaintiff collected lost-wages benefits under her car insurance policy. When those expired three years later, she applied for additional benefits through her employer, but was told that it was too late because she had not made a claim for long-term benefits within thirty days of the accident. The insurance company therefore denied the claim for benefits. The plaintiff filed suit, alleging that the hospital breached its fiduciary duty by failing to disclose the availability of long-term disability benefits to her spouse when a request for benefit information was made on her behalf. She also claimed the hospital breached its fiduciary duty by failing to notify the insurance company of her claim for benefits after her husband completed and returned the form entitled Initial Application for Disability Benefits.

On appeal, the Sixth Circuit specifically noted that ERISA fiduciaries are held to a high standard, and that among other duties, that "[a] fiduciary must give complete and accurate

information in response to participants' questions." *Id.* at 547 (quoting *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)). In *Drennan*, the court had held that "[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.' " *Drennan*, 977 F.2d at 251 (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)). A claim for breach of fiduciary duty will lie for such misleading communications regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. *Krohn*, 173 F.3d at 547 (citing *Berlin*, 858 F.2d at 1163–64). The court further stated that, within the context of a plaintiff's inquiry about disability benefits, "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled." *Id.* (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995)).

The court roundly rejected the hospital's argument that it had already complied with its duty to provide the plaintiff with information about the long-term disability policy "by providing her with a summary plan description, an employee handbook, and an individual meeting with [a human resources representative], who explained the long-term disability plan." *Id.* at 550. "Sixth Circuit precedent is directly contrary to Huron Memorial's contention. Providing a summary plan description several years before the request for information does not excuse the hospital from its duty to respond fully and accurately to later inquiries regarding benefits. Indeed, it would have been preferable for [the hospital] to refer the plaintiff to her summary plan description or employee handbook to find the answer to her questions, and to have given

her an additional copy if she had lost her own, than to have undertaken to provide such information and to have done so in such a careless and incomplete manner." *Id.* The court also found that the statements were materially misleading, insofar as they created a substantial likelihood that the a reasonable employee would be misled in the process of making an adequately informed decision about the benefits to which she might be entitled. *Id.* at 551.

*Krohn* is factually on all fours with the present case: the plaintiff there did not have a viable claim under § 1132(a)(1)(B) against the insurance company for recovery of long-term benefits, because there was no dispute that she had not actually applied for the benefits within the thirty-day time limit. Her only viable claim was against the hospital for breach of fiduciary duty, regardless of the fact that the damages effectively sought under § 1132(a)(3) were monetary in nature—the recovery of the value of the benefits to which the plaintiff would have been entitled if the hospital had not breached its duty to inform her about her eligibility for such benefits. With regard to damages, moreover, the *Krohn* court concluded that "the defendant [was] liable for the lost benefits that the plaintiff [had] sustained." *Id*. at 551. On remand, the district court was instructed simply to "determine the extent of plaintiff's damages and to enter judgment on her behalf in that amount." *Id.* at 552.

Perhaps it is time for the Sixth Circuit to revisit the issue, but for present purposes this Court is bound by *Krohn* rather than by *Alexander*,[4] and therefore finds that Weaver, if she

---

[4] *See United States v. Ennenga*, 263 F.3d 499, 504 (6th Cir. 2001) (unpublished decisions are not controlling precedent, citing 6th Cir. R. 28); *Salmalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828 (6th Cir. 2000) (same). Moreover, the Sixth Circuit has long held that the decision of an earlier panel decision prevails over a later one. *See, e.g.*, *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)).

establishes liability on the part of the Hospital at trial, will be able to recover from the Hospital the value of the life insurance benefits she would have been able to recover if she had been correctly informed about her ability to convert the group policy into an individual life insurance policy covering her former husband after their divorce.

## IV.    CONCLUSION

For the reasons set forth herein, the defendant Hospital's Motion for Judgment as a Matter of Law will be denied.  An appropriate order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge